IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HENRY BROCH & COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| SHANGHAI PECENP INTERNATIONAL CO., LTD., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

NOW COMES Plaintiff HENRY BROCH & COMPANY ("HBC"), by and through its attorneys, WIEDNER & McAULIFFE, LTD., and complains of Defendant SHANGHAI PECENP INTERNATIONAL CO., LTD. ("Shanghai Pecenp") as follows:

## PARTIES

1. Plaintiff HBC is an Illinois corporation with its principal place of business located at 3940 Porett Drive, Gurnee, Illinois, 60031.

2. Defendant Shanghai Pecenp is a foreign corporation organized under the laws of China and has its principal place of business in China. At all times relevant, Defendant Shanghai Pecenp promoted, marketed and sold its products to customers in the United States, including, but not limited to, customers in the state of Illinois.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity of the parties.

4. This Court has jurisdiction over Defendant Shanghai Pecenp because the Plaintiff's claims arise from the Defendant transacting business in the state of Illinois, selling and marketing its products in the state of Illinois, and causing injury by an act or omission in the state of Illinois.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Alternatively, venue is proper under 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS

6. HBC is in the business of sourcing ingredients, including herbs, spices, oils, and vegetable proteins from around the world. HBC sources its ingredients from manufacturers with environmentally-friendly processing practices, BRC "A" ratings, HACCP and third party audit certifications.

7. Shanghai Pecenp holds itself out to be a leading, specialized, and reliable supplier of AD vegetables/fruits, FD vegetables/fruits, IQF vegetables/fruits, spices and food additives. Shanghai Pecenp has registrations with ISO, Kosher, HACCP and GMP. Shanghai Pecenp states North America is a main market.

8. On or before August 6, 2016, Shanghai Pecenp agreed to manufacture jalapeno powder for HBC. HBC provided Shanghai Pecenp with product specifications for the jalapeno powder and a quality control survey, but at all times Shanghai Pecenp controlled the manufacture and production of the powder. Shanghai Pecenp agreed to adhere to the product specifications provided by HBC and FDA regulations.

9. On August 6, 2016, Shanghai Pecenp manufactured a "lot" of jalapeno powder labeled batch no. 7549A weighing 15,268 pounds. The powder was shipped to HBC's Gurnee facility in 347 44-pound sealed boxes. The Certificate of Analysis from Shanghai Pecenp

accompanying the shipments specified that the powder from lot 7549A was "negative" for salmonella and had an expiration date of August 5, 2018.

10. On October 4, 2016, HBC and International Flavor & Fragrances ("IFF") entered into a Memorandum of Agreement for IFF to purchase certain flavorings and spices from HBC, including jalapeno powder, for use in its seasoning mixes. From October 21, 2016 to March 27, 2017, HBC shipped 15,004 pounds of jalapeno powder from lot 7549A in their sealed boxes to IFF in ten separate shipments. HBC separately sold 264 pounds of jalapeno powder from lot 7549A to Phoenix Food Company ("Phoenix") in four shipments from October 19, 2016 to April 4, 2017.

11. Between October 21, 2016 and April 1, 2017, IFF combined the jalapeno powder contained in the first nine shipments of lot 7549A with other seasonings to produce a jalapeno-flavored seasoning blend. IFF subsequently sold and shipped the seasoning blend to Frito-Lay for its Lay's Kettle Cooked Potato Chips and Miss Vickie's Kettle Cooked Potato Chips.

12. On March 27, 2017, IFF received the 10th and final shipment of 37 sealed boxes of jalapeno powder from lot 7549A. IFF tested a sample from one of the boxes on April 1, 2017 that revealed a positive result for salmonella.

13. Salmonella is a potentially deadly bacterium. Salmonella is generally transmitted to humans by eating foods contaminated with animal feces. Exposure to heat above 70 degrees Celsius kills most strains of salmonella.

14. Pursuant to the U.S. Food and Drug Administration's ("FDA") recommendation and FDA protocols, on April 21, 2017, Frito-Lay initiated a recall of all products utilizing the jalapeno powder from the lot 7549A.

15. Subsequently, IFF and HBC also initiated recalls of their jalapeno-flavored seasoning and jalapeno powder, respectively, of all products utilizing the jalapeno powder from the lot 7549A manufactured by Shanghai Pecenp.

16. On or before April 9, 2017, HBC notified Shanghai Pecenp that jalapeno powder from lot 7549 was found to be contaminated with salmonella.

17. On April 21, 2017, Frito-Lay's parent company, PepsiCo. issued a letter to IFF claiming reimbursement for all of its costs, expenses and damages associated with the recall, including losses claimed by its co-Producer, Shearer's Foods, Inc., which it claimed were in excess of $19.8 million dollars.

18. On May 5, 2017, IFF made a claim to HBC seeking full indemnification for PepsiCo and Shearer's alleged losses pursuant to the terms of the Memorandum of Agreement and a claim of negligence. Phoenix also separated issued a demand to HBC in the amount of $64,112.65 for its losses from the recall.

19. In order to investigate the source of the contamination of the subject lot, HBC representatives traveled to China to determine if Shanghai Pecenp's manufacturing facility had adhered to the quality control specifications provided by HBC and FDA regulations to ensure products manufactured at its facility were not adulterated during processing.

20. During its investigation, HBC learned that Shanghai Pecenp had outsourced all or part of the manufacturing of the jalapeno powder to third parties without HBC's consent or knowledge, including the jalapeno powder from the lot 7549A.

21. During its investigation, HBC learned that Shanghai Pecenp, and/or its agents or subcontractors, did not adequately sanitize, heat, clean, or test the jalapeno powder from lot 7549A as required by FDA regulations and the quality control specifications provided by HBC.

22. During its investigation, HBC learned that Shanghai Pecenp, and/or its agents or subcontractors, did not adequately sanitize, heat, clean, or test the jalapeno powder from lot 7549A despite presenting a Certificate of Analysis to HBC representing that such tasks were undertaken.

23. As a result of Shanghai Pecenp's failure to adequately sanitize, heat, clean, or test the jalapeno powder from lot 7549A in compliance with FDA regulations and the quality control specifications provided by HBC, the powder in lot 7549A became adulterated with salmonella and HBC unknowingly distributed the adulterated salmonella to IFF and Phoenix Foods.

## COUNT 1

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT

24. HBC re-alleges and incorporates by reference the allegations in Paragraphs 1 through 23 of the Complaint as if fully set forth herein.

25. At all times relevant there was in full force and effect the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (the "Consumer Fraud Act")

26. Section 2 of the Consumer Fraud Act, 815 ILCS 505/2, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act. (Footnotes omitted).

26. HBC is a consumer within the meaning of the Consumer Fraud Act.

27. Shanghai Pecenp engaged in the misrepresentation of the following material facts:

5

(a) That Shanghai Pecenp held formal quality approvals;

(b) That Shanghai Pecenp had a documented HACCP plan in place;

(c) That Shanghai Pecenp had a foreign material control device on processing lines;

(d) That Shanghai Pecenp had a corrective action and control of non-conforming products;

(e) That Shanghai Pecenp had proper sanitation practices in place; and

(f) That Shanghai Pecenp performed testing or used outside laboratories to test for salmonella.

28. Shanghai Pecenp engaged in the misrepresentation of the aforementioned material facts with the intent that others, such as HBC, rely upon the misrepresentation, concealment, suppression or omission of such material facts and purchase Shanghai Pecenp's jalapeno powder contaminated with salmonella.

29. HBC would not have purchased the jalapeno powder had it known or become informed of the material defects of salmonella contamination in lot 7549A, that Shanghai Pecenp was outsourcing the manufacturing of the jalapeno powder, and/or that Shanghai Pecenp would produce a Certificate of Analysis for lot 7549A that falsely misrepresented that it tested the lot for salmonella.

30. Shanghai Pecenp's misrepresentation, concealment, suppression, or omission of material facts as alleged above constitutes unfair, deceptive and fraudulent business practices within the meaning of the Consumer Fraud Act.

31. Because of their misrepresentation, concealment, suppression or omissions of the material facts alleged above, Shanghai Pecenp deceived HBC. Shanghai Pecenp's deceptive conduct occurred in the course of engaging in trade or commerce.

32. HBC relied on Shanghai Pecenp's representation that the jalapeno powder was not defective and was reasonably suited for its intended use and purpose.

33. By advertising and marketing Shanghai Pecenp's products in various media, including a website and hosting a booth at the Institute of Food Technologist's trade show in Chicago, Illinois, Shanghai Pecenp misled consumers about the safety and sanitation of the jalapeno powder, as described above. Shanghai Pecenp intentionally engaged in these deceptive acts and made false or misleading representations, capable of causing HBC harm if relied upon.

34. As a direct, foreseeable and proximate result of Shanghai Pecenp's violation of Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, Shanghai Pecenp was able to maximize profits, Shanghai Pecenp was able to maximize profits by failing to inspect, recall, replace or otherwise notify HBC of the defects by convincing and inducing HBC to purchase its jalapeno powder.

35. As a direct, foreseeable and proximate result of Shanghai Pecenp's violation of Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2, HBC has sustained and will continue to sustain actual, direct and/or consequential damages in an amount which is as yet undetermined, and attorneys' fees.

## COUNT II
## BREACH OF IMPLIED WARRANTY

36. HBC re-alleges and incorporates by reference the allegations in Paragraphs 1 through 35 of the Complaint as if fully set forth herein.

37. Under the Uniform Commercial Code §2-314, every sale of goods includes an implied warranty of merchantability, unless excluded or modified.

38. At all times, Illinois has codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability.

39. As a specialized supplier and manufacturer of AD vegetables/fruits, FD vegetables/fruits, IQF vegetable/fruits, spices and food additives, Defendant Shanghai Pecenp is a merchant as defined by the Illinois Commercial Code. 810 ILCS 5/2-104(1). Furthermore, Shanghai Pecenp's jalapeno powders are "goods" as defined by the Illinois Commercial Code. 810 ILCS 5/2-105.

40. Shanghai Pecenp represented that the jalapeno powder would be safe for consumer's use and in compliance with ISO, KOSHER, HACCP and GMP policies. Implied in Shanghai's representations is that the jalapeno powder was of merchantable quality, free of defects and contamination, and was safe and fit for its ordinary purpose - for human consumption.

41. Shanghai Pecenp brought itself into privity with HBC by warranting the jalapeno powder to them directly and/or through the agency doctrine. Furthermore, Shanghai Pecenp knew the identity, purpose and requirements of HBC and manufactured the jalapeno powder to meet its requirements.

42. Shanghai Pecenp breached its implied warranties in connection with their sale of contaminated jalapeno powder to HBC. The jalapeno powder was not safe or fit for its ordinary purposes and intended use and was not free of defects, such as being contaminated with salmonella.

43. As merchants of the contaminated jalapeno powder, Shanghai Pecenp knew that purchasers relied upon them to supply, manufacture and sell food products that were reasonably safe and would not endanger their consumers.

44. HBC adequately notified Shanghai Pecenp of their breach.

45. As a direct and proximate result of Shanghai Pecenp's breach, HBC has suffered and will suffer injuries including, but not limited to, the purchase price of the contaminated jalapeno powder, litigation costs and indemnification costs.

## COUNT III

## BREACH OF EXPRESS WARRANTY

46. HBC re-alleges and incorporates by reference the allegations in Paragraphs 1 through 45 of the Complaint as if fully set forth herein.

47. At all times, Illinois has codified and adopted the provisions of the Uniform Commercial Code governing the express warranty of merchantability. Ill. Comp. Stat. Ann. Ch. 810, 5/2-313.

48. The Uniform Commercial Code § 2-313 provides that an affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the promise.

49. Shanghai Pecenp manufactured, supplied and sold the contaminated jalapeno powder and represented that the jalapeno powder was safe and fit for human consumption, complied with ISO, KOSHER, HACCP, and GMP policies, and was free of contamination.

50. Shanghai Pecenp expressly warranted that the jalapeno powder was manufactured in conformance with all safety requirements under the U.S. federal and other applicable laws and regulations, including the phytosanitary requirements of the United States. Further, Shanghai Pecenp expressly warranted through the Certificate of Analysis that the jalapeno powder was manufactured in conformance with industry-developed and product-specific standards, and that it was tested and approved by independent outside laboratories.

51. Contrary to such representations, Shanghai Pecenp failed to disclose that the jalapeno powder was not safe for human consumption as it contained salmonella, a potentially deadly bacterium.

52. Shanghai Pecenp intended to and did, by virtue of agreeing to utilize HBC's product specification and quality control survey, expressly warrant the merchantability of the jalapeno powder to HBC, and made such express warranties part of the basis for the bargain.

53. When Shanghai Pecenp manufactured, supplied and sold the jalapeno powder, Shanghai Pecenp knew the purpose for which the jalapeno powder was intended and expressly warranted that the jalapeno powder was safe and fit for human consumption.

54. HBC relied upon the skill, knowledge and judgment of Shanghai Pecenp to manufacture, supply and sell jalapeno powder that was fit for human consumption.

55. Shanghai Pecenp breached its express warranties in connection with the sale of the jalapeno powder to HBC.

56. HBC notified Shanghai Pecenp that the jalapeno powder was contaminated with salmonella.

57. As a direct and proximate result of Shanghai Pecenp's breach, HBC has suffered and will continue to suffer injuries including, but not limited to, the purchase price of the contaminated jalapeno powder, litigation costs and indemnification costs.

## COUNT IV

### NEGLIGENCE

58. HBC re-alleges and incorporates by reference the allegations in Paragraphs 1 through 57 of the Complaint as if fully set forth herein.

59. Shanghai Pecenp owed a duty to HBC to use reasonable care in the manufacture, distribution and sale of its jalapeno powder, which would have prevented or eliminated the risk that the jalapeno powder would become contaminated with salmonella or any other dangerous pathogen.

60. Shanghai Pecenp owed a duty to comply with all applicable statutes, laws, regulations and safety codes pertaining to the manufacture, distribution, storage and sale of the jalapeno powder.

61. Shanghai Pecenp owed a duty to HBC to maintain its premises in a sanitary and safe condition so that the jalapeno powder it manufactured and sold would not be contaminated with salmonella.

62. Shanghai Pecenp had a duty to properly supervise, train and monitor its employees, and to ensure their compliance with all applicable statutes, laws, regulations and safety codes pertaining to the manufacture, distribution, storage and sale of the jalapeno powder..

63. Shanghai Pecenp breached the aforesaid duties owed to HBC by committing the following acts and omissions of negligence:

   (a)   Failed to adequately maintain or monitor the sanitary conditions of their products, premises, and employees;

   (b)   Failed to operate its facilities in a safe, clean and sanitary manner;

   (c)   Failed to apply applicable food safety statutes, laws, regulations, safety codes, policies and procedures to ensure the safety and sanitary conditions of their food, products, premises and employees;

   (d)   Failed to prevent the transmission of salmonella to consumers of its food;

   (e)   Failed to properly train its employees and agents how to prevent the transmission of salmonella on its premises, or in its food products;

   (f)   Failed to properly supervise its employees and agents to prevent the transmission of salmonella on its premises, or in its food products; and

    (g)    Failed to use ingredients, supplies and other constituent materials that were reasonably safe, free of defects and that complied with applicable federal and state laws, representation, regulations and statutes.

63. As a direct and proximate result of Shanghai Pecenp's negligence, HBC has suffered and will continue to suffer injuries including, but not limited to, the purchase price of the contaminated jalapeno powder, litigation costs and indemnification costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Henry Broch & Company prays for judgment against Defendant Shanghai Pecenp International Co., Ltd. in an amount that is fair and reasonable, for attorneys' fees, for costs, and for any other relief the Court deems proper.

## JURY DEMAND

Plaintiff Henry Broch & Company demands a jury trial on all issues so triable.

Respectfully submitted,

WIEDNER & McAULIFFE, LTD.,

 s/Richard J. Leamy, Jr._____
Attorneys for Henry Broch & Company

Richard J. Leamy - # 3122843
David Sethi - # 6297594
Rachel S. Nevarez - # 6304120
Wiedner & McAuliffe, Ltd.
One North Franklin, Suite 1900
Chicago, IL  60606
(312) 855-1105